USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/29/2019

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

**EVELYN ALTAGRACIA CRUZ MONTAS,**

                              **Plaintiff,**

              -against-

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

-----------------------------------------------------------------X

**18-CV-00169 (SN)**

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

     Plaintiff brings this action pursuant to 42 U.S.C. § 405(g). She seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), which denied her application for disability insurance benefits ("DIB"). Each party submitted a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Commissioner's motion is GRANTED, and Plaintiff's motion is DENIED.

## BACKGROUND

**I.    Medical History**

    Both Plaintiff and the Commissioner have provided summaries of Plaintiff's medical history. See ECF No. 16, Plaintiff's Brief ("Pl's Br."), at 1–8; ECF No. 22, Defendant's Brief ("Def's Br."), at 2–11. The summaries are substantially consistent and are supported by evidence contained in the administrative record. Accordingly, the Court adopts the parties' description of Plaintiff's medical history for the purposes of this decision. I discuss the medical evidence pertinent to the adjudication of this case below.

## II.     Procedural History

Plaintiff applied for DIB on November 17, 2014. ECF No. 14, Administrative Record ("Tr."), at 79. She alleged that she was disabled due to systemic lupus erythematosus, asthma, hypothyroidism, and high blood pressure. Tr. 181. Plaintiff's application was denied initially on January 15, 2015. Tr. 89. Thereafter, Administrative Law Judge Paul Armstrong (the "ALJ") held a video hearing to evaluate Plaintiff's application. Tr. 45. The ALJ considered Plaintiff's claim *de novo*, and on August 24, 2016, issued a decision finding that Plaintiff was not entitled to benefits. Tr. 20. The Appeals Council denied Plaintiff's request for review on November 15, 2017, and Plaintiff timely initiated this action on January 9, 2018. Tr. 1; ECF No. 1, Complaint, at 1.

## DISCUSSION

## I.     Standard of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court may set aside the Commissioner's decision only if it is "based upon legal error or is not supported by substantial evidence." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (internal citations omitted). If the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive. Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995). Accordingly, once an ALJ has found certain facts, the court can reject those facts "only if a reasonable factfinder would have to

conclude otherwise." Brault v. Comm'r of Soc. Sec'y, 683 F.3d 443, 448 (2d Cir. 2012) (internal citations omitted) (emphasis in original).

Nevertheless, to accommodate a meaningful review by a district court, the ALJ must "clearly state the legal rules he applies and the weight he accords the evidence considered." Rivera v. Astrue, No. 10-CV-4324 (RJD), 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (internal citations omitted). While the ALJ's decision need not "mention[ ] every item of testimony presented," Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983), or "reconcile explicitly every conflicting shred of medical testimony," Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (internal citations omitted), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability. Martinez o/b/o M.G. v. Comm'r of Soc. Sec'y, No. 16-CV-1153 (PKC) (RLE), 2017 WL 9538863, at *6 (S.D.N.Y. Aug. 25, 2017) (collecting cases), adopted by, 2017 WL 4232578 (Sept. 22, 2017). In sum, the ALJ must discuss the "crucial factors in any determination . . . with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

## II.     Definition of Disability

To demonstrate a disability under the Social Security Act (the "Act"), a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is defined as an "impairment that results from anatomic, physiological, or psychological abnormalities which are demonstrable by medically acceptable . . . techniques." Id. at § 423(d)(3). A claimant is disabled only if his

"impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at § 423(d)(2)(A).

Under the Commissioner's regulations, an ALJ applies a five-step analysis to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a). The Court of Appeals has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1 [the "Listings"]. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183–84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)). The claimant bears the burden of proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last. Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013).

### III. The ALJ Decision

Following the five-step framework, the ALJ concluded that Plaintiff was not disabled from September 30, 2014, Plaintiff's alleged onset date, through August 24, 2016, the date of the ALJ's decision. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the relevant period. Tr. 22. At step two, the ALJ found that Plaintiff had the following severe impairments: asthma, lupus, obesity, and fibromyalgia. Id. Next, at step three,

4

the ALJ found that Plaintiff's impairments did not meet or medically equal one of the impairments contained in the Listings. Tr. 23–24.

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"). A claimant's RFC is her ability to perform sustained work activity on a regular and continuing basis. Social Security Ruling 96-8p, 1996 WL 137184, at *2 (July 2, 1996). In other words, the RFC is the most a claimant can do in a work setting despite her impairments. Selian, 708 F.3d at 418 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ concluded that Plaintiff could perform a limited range of light work. Tr. 24. Specifically, the ALJ found that Plaintiff could carry 10 pounds frequently and 20 pounds occasionally. Id. Plaintiff could stand or walk for six hours in an eight-hour workday, or alternatively, sit for six hours in an eight-hour day. Id. Nevertheless, Plaintiff could not have concentrated exposure to noxious fumes, odors, or respiratory irritants. Id.

At step four, the ALJ found that Plaintiff could perform past relevant work. Tr. 25. The ALJ based his decision on the testimony of a vocational expert, who stated that a person with Plaintiff's RFC could perform Plaintiff's past work as a child welfare caseworker. Tr. 25, 73. Although this finding meant that Plaintiff was not disabled under the Act, the ALJ nevertheless proceeded to step five. Because Plaintiff's ability to perform the full range of light work was impeded by additional limitations, the ALJ again considered the testimony of a vocational expert. Tr. 26. The expert testified that an individual with a sedentary functional capacity who could not be exposed to respiratory irritants could still perform jobs that existed in the national economy. Tr. 73–74. These included: sorter, final assembler, and visional inspector. Id. Thus, in the alternative, the ALJ also concluded at step five that Plaintiff was not disabled. Tr. 27.

## IV. Analysis

Plaintiff challenges the ALJ's decision in five ways. Specifically, Plaintiff argues that the ALJ failed to (1) afford proper weight to the medical opinion evidence; (2) consider the correct Listing in evaluating Plaintiff's fibromyalgia; (3) justify his finding that Plaintiff experienced "limited flare ups;" (4) evaluate Plaintiff's obesity; and (5) conduct a fair and impartial administrative hearing. Pl's Br., at 10–18. The Court addresses these arguments in turn.

### A. The ALJ Afforded Proper Weight to the Medical Opinion Evidence

Plaintiff had two treating physicians: Dr. Dean Mitchell, an allergist and immunologist, who treated Plaintiff from October 16, 2014, until January 2015; and Dr. Jason Faller, a rheumatologist, who treated Plaintiff from November 3, 2014, until at least May 9, 2016. Plaintiff was also examined by Dr. Carol McLean Long, a consultative physician, in December 2014. Plaintiff argues that the ALJ should have given (1) controlling weight to the medical opinions of Drs. Mitchell and Faller; and (2) less than "some weight" to the opinion of Dr. Long. Pl's Br., at 10, 14. The Court disagrees on both fronts.

An ALJ is generally required to give deference to the medical opinion of a claimant's treating physician. Halloran v. Barnhart, 362 F. 3d 28, 32 (2d Cir. 2004). Specifically, an ALJ should afford such an opinion controlling weight, so long as it is well-supported by medical findings and is not inconsistent with substantial evidence in the record. 20 C.F.R. § 416.927(c)(2). If the ALJ does not give the opinion controlling weight, he must provide "good reasons" for doing so. Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 129–130 (2d Cir. 2008)). Generally, the opinion of a treating physician is not afforded controlling weight when it is contradicted by other medical experts. Burgess, 537 F.3d at 128 (internal citations omitted). In these cases, the ALJ must consider the factors set forth

in the Commissioner's regulations. Astrue, 708 F.3d at 418. These include: (1) the nature and extent of the treatment relationship; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. Id.; 20 C.F.R. § 416.927(c). The ALJ is not required to recite each factor explicitly. Martinez-Paulino v. Astrue, No. 11-CV-5485 (RPP), 2012 WL 3564140, at *16 (S.D.N.Y. Aug. 20, 2012). Rather, the ALJ's decision should "reflect application of the substance of the rule." Id.

In his decision, the ALJ gave "little weight" to the opinions of Plaintiff's treating physicians, and "some weight" to that of Plaintiff's consulting physician. Tr. 25. These findings were free of legal error and supported by substantial evidence.

### 1. Dr. Dean Mitchell

On December 2, 2014, Dr. Mitchell completed a medical assessment regarding Plaintiff's functional abilities. Tr. 639–43. Plaintiff suffered from severe fatigue, joint pain, and asthma. Tr. 639. Dr. Mitchell noted that Plaintiff had coarse breathing sounds in both lungs and that she could walk only three blocks before having to rest. Tr. 641–42. He also stated that Plaintiff had a forced expiratory volume ("$FEV_1$") of 40%, which indicated a moderate to severe restriction. Tr. 642, 538. Based on these symptoms, Dr. Mitchell diagnosed Plaintiff with chronic fatigue syndrome, autoimmune arthritis, and asthma. Tr. 639. He opined that Plaintiff was limited in her ability to push and pull. Tr. 641. He further opined that Plaintiff could carry only two pounds, stand / walk for less than two hours per day, and sit for less than six hours per day. Id. Although supported to an extent, these conclusions are inconsistent with substantial evidence in the record.

First, as noted by the ALJ, Dr. Mitchell's opinion is contradicted by that of Dr. Long, Plaintiff's consulting physician. See Tr. 24–25. The report of a consulting physician may

7

constitute substantial evidence. Caceres v. Colvin, No. 15-CV-4056 (PKC), 2016 WL 4734664, at *10 (S.D.N.Y. Sept. 9, 2016) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983)). Here, Dr. Long examined Plaintiff on December 22, 2014. Tr. 258–62. She concluded that Plaintiff should avoid respiratory irritants, but that Plaintiff otherwise had only mild physical limitations. Tr. 261. This conclusion was supported by Dr. Long's clinical findings. Plaintiff used inhalers and a nebulizer treatment to keep her asthma stable. Tr. 258. Upon examination, Plaintiff's lungs were clear to auscultation, and she had no significant chest-wall abnormalities. Tr. 260. Plaintiff also had a normal percussion, a normal diaphragmatic motion, and a normal anterior-posterior diameter. Id. This evidence undermines Dr. Mitchell's conclusions regarding the severity of Plaintiff's asthma.

Similarly, Dr. Long's examination suggested that Plaintiff had only mild joint pain. Although unsteady through part of the exam, Plaintiff was in no acute distress. Tr. 260. She had a normal gait and station, could squat fully, and was able to walk on her heels and toes without difficulty. Id. Moreover, Plaintiff's joints were stable and non-tender, with no redness, heat, swelling, or effusion. Tr. 261. She also had a full range of motion throughout her body, including her shoulders, elbows, wrists, hips, knees, and ankles. Tr. 260–61. There was no evidence of subluxations, contractures, or ankylosis, and Plaintiff exhibited intact finger dexterity, full grip strength, and full strength in her upper and lower extremities. Tr. 261. Thus, Dr. Long's clinical findings undermine Dr. Mitchell's conclusion that Plaintiff had severe physical limitations.

Second, Dr. Mitchell's medical assessment is contradicted by his own treatment notes. See Tr. 25. Although Plaintiff complained of long-standing fatigue during her initial visit, she consistently reported that her symptoms improved over the following months. On three separate occasions, Plaintiff stated that she had "more energy" or that her "energy [was] better." Tr. 598,

8

610, 614. Dr. Mitchell noted Plaintiff's improvement in his final treatment note. Tr. 614. He stated that Plaintiff had received a series of vitamin injections and that those injections had helped with Plaintiff's energy. Id.

A similar trend appears for Plaintiff's asthma. After her initial visit with Dr. Mitchell in October 2014, Plaintiff was prescribed prednisone and was directed to use an inhaler twice a day. Tr. 538. Plaintiff's symptoms generally improved from that point forward; indeed, she reported that her breathing was better at each of her subsequent visits with Dr. Mitchell. Tr. 598, 602, 610, 614. Plaintiff's reports were confirmed by various clinical findings. Dr. Mitchell noted that Plaintiff's $FEV_1$ increased to 51% and that her lungs were clear to auscultation, with comfortable breathing and no wheezing. Tr. 598, 602. He concluded that Plaintiff's asthma was "under better control" because she had started using an inhaler. Tr. 614. Although Plaintiff visited the emergency room for an asthma attack, her symptoms were mild, and she did not complain about her breathing after December 2014. Tr. 339–41.

For these reasons, Dr. Mitchell's medical assessment was inconsistent with substantial evidence in the record. The ALJ was not required to afford his opinion controlling weight.[1]

### 2. Dr. Jason Faller

The Court arrives at a similar conclusion for Dr. Jason Faller, Plaintiff's rheumatologist. Dr. Faller treated Plaintiff for lupus, back pain, and fibromyalgia. Tr. 648. On March 17, 2015, he completed a Residual Functional Capacity Questionnaire. Tr. 348–52. Plaintiff experienced severe diffuse muscle pain that was triggered by standing and walking. Tr. 348. She also exhibited severe fatigue, hair loss, and peripheral neuropathy. Tr. 349. Although Plaintiff had

---

[1] Although not referenced by the ALJ, there are additional concerns with Dr. Mitchell's opinion. For example, although Dr. Mitchell's medical assessment indicated that Plaintiff's $FEV_1$ was 40%, his treatment notes from the same day indicate that Plaintiff's FEV was 54%. Compare Tr. 642 with Tr. 610.

photosensitivity, a sedimentation rate of 60, and a positive test for antinuclear antibodies ("ANA"), she did not fulfill the diagnostic criteria for systemic lupus erythematosus. Tr. 348–49. Nevertheless, Dr. Faller opined that Plaintiff could never lift more than 10 pounds and could rarely lift any less. Tr. 350. She could sit for at least six hours in an eight-hour workday, but she could stand/walk for less than two hours during the same period. Id. Although Plaintiff did not have any environmental restrictions, she needed two unscheduled breaks per day for 30 minutes each. Tr. 351. Dr. Faller concluded that Plaintiff's symptoms would frequently interfere with her ability to perform simple tasks and that she was incapable of even low stress jobs. Id.

Like that of Dr. Mitchell, Dr. Faller's medical opinion is inconsistent with substantial evidence in the record. First, the record indicates that Plaintiff's lupus was mild in nature. At the time of her initial assessment, Plaintiff reported a history of rashes, hair loss, and some arthralgias. Tr. 660. Dr. Faller noted, however, that Plaintiff's skin was currently without rashes, that she had a full range of motion in her joints, and that there was no evidence of synovitis. Tr. 254. He also noted that, because Plaintiff was "negative for anti-DNA," it was unlikely that there was any serious organ involvement. Id.

After Dr. Faller started a treatment program, Plaintiff's lupus symptoms remained generally stable. Plaintiff told Dr. Long that she had "started on treatment with some improvement." Tr. 258. During Dr. Long's examination, Plaintiff exhibited normal physical functioning, and her joints were stable and non-tender, with no redness, heat, swelling, or effusion. Tr. 260–61. These findings are supported by Dr. Faller's subsequent treatment notes. On February 3, 2015, Plaintiff reported that her joint and chest pain had improved, and on March 17, 2015, Plaintiff denied having a rash, arthralgia in the hands, or mucosal symptoms. Tr. 655, 657. Although Plaintiff had residual hyperpigmentation on examination, she had no adenopathy,

synovitis, or thyromegaly. Tr. 656. Plaintiff did not see Dr. Faller for nearly a year, until April 26, 2016. Tr. 651. At that point, and as emphasized by the ALJ, Dr. Faller concluded that Plaintiff had mild lupus symptomology, with no evidence of disease flare or worsening. Tr. 24–25, 652. This evidence contradicts Dr. Faller's opinion that Plaintiff had severe physical limitations.

Further, although Plaintiff complained of chronic back pain, the record suggests that her symptoms were generally mild. See Tr. 614, 653, 655. Dr. Long found that Plaintiff's cervical and lumbar spine showed full flexion, extension, and lateral flexion bilaterally. Tr. 260. Again, these findings are supported by Dr. Faller's treatment notes. He found that Plaintiff had a full range of movement in her lumbar spine, Tr. 658, and although he initially suspected disc disease, he later concluded that Plaintiff's x-rays were negative. Tr. 655.

A similar analysis applies to Plaintiff's fibromyalgia. In evaluating fibromyalgia, courts focus on whether a claimant exhibits "tender points." Selian, 708 F.3d at 419 (citing Green-Younger v. Barnhart, 335 F.3d 99, 101, 107 & n.14 (2d Cir. 2003)). According to the regulations, ALJs will conclude that a patient has a medically determinable impairment of fibromyalgia when they have, among other things, at least 11 positive tender points on physical examination. Social Security Regulation ("SSR") 12-2p, 2012 WL 3104869, at *3 (July 25, 2012).[2] The record contains little evidence regarding Plaintiff's fibromyalgia. Although Plaintiff twice complained of generalized muscular pain, see Tr. 614, 655, her medical records reference tender points only once, during the April 2016 examination with Dr. Faller. But Dr. Faller noted

---

[2] The Ruling also sets forth an alternative path to evaluate fibromyalgia. SSR 12-2p, 2012 WL 3104869, at *3. Instead of relying on tender points, a claimant may show that he has "[r]epeated manifestations of six or more [fibromyalgia] symptoms . . . especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." Id. (footnotes omitted).

11

only four tender points, and he stated that Plaintiff had no synovitis, malar rash, or mucosal ulcers. Tr. 651. He did not mention fibromyalgia or Plaintiff's tender points in a follow-up visit on May 9, 2016. Tr. 649. Accordingly, because Dr. Faller's assessment was inconsistent with his own treatment notes and with Dr. Long's examination, the ALJ was not required to give his opinion controlling weight.

### 3. Dr. Carol McLean Long

Dr. Long, a consulting physician, saw Plaintiff on December 22, 2014. Tr. 258–62. In his decision, the ALJ gave "some weight" to Dr. Long's opinion. Tr. 25. Contrary to Plaintiff's contention, the ALJ's finding was supported by substantial evidence.

Dr. Long opined that Plaintiff should avoid respiratory irritants, but that otherwise Plaintiff had only a mild limitation her ability to sit, stand, climb, push, pull, or carry heavy objects. Tr. 261. As noted by the ALJ, Dr. Long's conclusions were supported by her clinical findings. Tr. 25. Plaintiff's lungs were clear to auscultation, and she had no significant chest-wall abnormalities. Tr. 260. Plaintiff also had a normal percussion, a normal diaphragmatic motion, and a normal anterior-posterior diameter. Id. Although unsteady through part of the exam, Plaintiff showed no acute distress. Id. She had a normal gait and station, could squat fully, and was able to walk on her heels and toes without difficulty. Id. Moreover, Plaintiff's joints were stable and non-tender, with no redness, heat, swelling, or effusion. Tr. 261. She also had a full range of motion throughout her body, and her cervical and lumbar spine showed full flexion, extension, and lateral flexion bilaterally. Tr. 260–61. Nevertheless, because he concluded that Dr. Long overlooked Plaintiff's history of lupus, the ALJ afforded Dr. Long's opinion only "some weight." Tr. 25. Although Dr. Long's conclusions should not have been undervalued for this reason alone — her report makes several references to Plaintiff's lupus — there are other

12

reasons to discount her opinion, particularly Plaintiff's subsequent treatment with Dr. Faller. The ALJ's evaluation of Dr. Long's medical assessment was therefore supported by substantial evidence.

In her moving papers, Plaintiff contends that Dr. Long's opinion should have been given less weight. Pl's Br., at 14. Plaintiff's various arguments are unavailing. First, the ALJ was justified when he stated that Dr. Long's opinion was supported by "the claimant's stable physical functioning during her examination." Tr. 25. Although Plaintiff was unsteady through part of the exam, her movement and flexibility were otherwise entirely unremarkable. Tr. 260–61. Second, the ALJ was not required to discredit Dr. Long's opinion because she failed to discuss, by name, Plaintiff's fibromyalgia. Plaintiff complained that she suffered from lupus, chronic asthma, high blood pressure, and thyroid disease. Tr. 258. Dr. Long questioned Plaintiff on each of these conditions and performed a thorough physical examination. Tr. 258–61. Given the lack of evidence in the record regarding Plaintiff's fibromyalgia — particularly in December 2014, at the time of the examination — Dr. Long had no reason to discuss fibromyalgia in detail. Accordingly, Plaintiff's objections do not alter the Court's analysis, and the Court concludes that the ALJ's decision was supported by substantial evidence.

### B. The ALJ Properly Evaluated Plaintiff's Fibromyalgia

At step three, the ALJ found that Plaintiff's fibromyalgia did not medically equal Listing 14.06 (undifferentiated and mixed connective tissue disease). Tr. 23. Plaintiff contends that the ALJ relied on the wrong Listing, asserting instead that he should have used Listing 14.09 (inflammatory arthritis). Pl's Br., at 15. This argument misunderstands the pertinent regulations and therefore does not require remand.

As discussed above, fibromyalgia is governed by SSR 12-2p. The ruling states that fibromyalgia is a "complex medical condition" and explains in detail how the Commissioner will evaluate the disease. 2012 WL 3104869, at *1–2. For step three of the evaluation process, the ruling provides:

> [W]e consider whether the person's impairment(s) meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1). FM cannot meet a listing in appendix 1 because FM is not a listed impairment. At step 3, therefore, we determine whether FM medically equals a listing **(for example, listing 14.09D in the listing for inflammatory arthritis),** or whether it medically equals a listing in combination with at least one other medically determinable impairment.

Id. at *6 (emphasis added). SSR 12-2p states that fibromyalgia is not a listed impairment, acknowledging that there is no specific corresponding Listing. Id. Although the ruling uses Listing 14.09D as an *example* of a Listing that the ALJ could consider, it does not mandate or even recommend that an ALJ is required to do so. Plaintiff cites no authority to support her contention that (1) an ALJ is obligated to use 14.09D when evaluating a claimant's fibromyalgia; or (2) remand is required when an ALJ relies on 14.06 instead. But see Schuh v. Berryhill, No. 16-CV-636V [sic], 2017 WL 4535069, at *1 (W.D.N.Y. Sept. 14, 2017), adopted by, No. 16-CV-00636, 2017 WL 4518170 (Oct. 10, 2017) (indicating that 14.06 is the "closest Social Security impairment listing" for fibromyalgia). As a result, the Court concludes that the ALJ did not err when he considered Plaintiff's fibromyalgia under Listing 14.06.

C.  **The ALJ Properly Evaluated Plaintiff's Flare-Ups**

Next, Plaintiff argues that the ALJ improperly substituted his own medical opinion for that of Plaintiff's treating physicians. Pl's Br., at 16. Specifically, Plaintiff claims that there is

14

nothing in the record to support the ALJ's assertion that Plaintiff had "limited flare-ups." Id. This argument is unavailing.

Plaintiff is correct that an ALJ cannot independently evaluate the medical evidence. See Burgess, 537 F.3d at 131 (quoting Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)) ("[T]he Commissioner is [not] permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion."). But that did not happen here. In determining Plaintiff's RFC, the ALJ emphasized that the record is "absent recent flare-ups of [Plaintiff's] condition." Tr. 24–25. This finding is supported by substantial evidence. Dr. Faller, for example, concluded in April 2016 that Plaintiff had mild lupus symptomology, with no "evidence of disease flare or worsening." Tr. 652. As a result, the ALJ did not substitute his own medical opinion for that of Plaintiff's treating physicians.

In her moving papers, Plaintiff emphasizes that Dr. Mitchell stated that Plaintiff would have flare-ups three times per week. Pl's Br., at 16. While relevant to an extent, this evidence is not dispositive. Dr. Mitchell made this statement on an FMLA form, and he was referring to Plaintiff's asthma, not her lupus or other conditions. Tr. 590. Thus, even if Plaintiff had regular flare ups at the time, the record indicates that Plaintiff's asthma subsequently improved. Dr. Mitchell's treatment notes, for example, show that Plaintiff consistently reported that her breathing was better after she began medication. Tr. 598, 602, 610, 614. Plaintiff's subjective reports were confirmed by various clinical findings. Indeed, both Drs. Long and Mitchell noted that Plaintiff's lungs were clear to auscultation, and otherwise functioning normally. Tr. 260 (Long); 598, 602, 614 (Mitchell). For these reasons, the ALJ did not err when he determined that Plaintiff's condition had limited flare-ups.

### D. The ALJ Properly Considered Plaintiff's Obesity

The ALJ determined that Plaintiff's obesity was a severe impairment. Tr. 22. Although he considered the effects of Plaintiff's obesity at step three, Tr. 23, the ALJ did not expressly articulate their impact, if any, in determining Plaintiff's RFC. Tr. 24–25. Contrary to Plaintiff's contention, this is not a ground for remand.

Obesity can limit a claimant's functioning. SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002). As a result, if an ALJ concludes that a claimant is obese, he must consider that determination in evaluating the claimant's RFC. Id. at *7. This does not mean, however, that an ALJ must "explicitly discuss" a claimant's obesity. Wilson v. Colvin, No. 14-CV-5666 (DF), 2015 WL 5786451, at *30 (S.D.N.Y. Sept. 29, 2015). Rather, the ALJ need only "weigh[] evaluations by doctors that have accounted for the claimant's [condition]." Paulino v. Astrue, No. 08-CV-02813 (CM)(AJP), 2010 WL 3001752, at *18 (S.D.N.Y. July 30, 2010) (collecting cases). Thus, there is no error where the ALJ relies on medical reports that noted the claimant's obesity and provided an overall assessment of the claimant's limitations. Drake v. Astrue, 443 F. App'x 653, 657 (2d Cir. Nov. 2, 2011).

Here, Plaintiff's physicians were aware of her obesity. A Body Mass Index ("BMI") greater than 30.0 generally qualifies as obese. See SSR 02-1p, 2002 WL 34686281, at *2. Dr. Faller's treatment notes show that Plaintiff's BMI was 29.6, and Dr. Mitchell's records indicate that Plaintiff's BMI was 30.2. Tr. 651, 656, 658, 660 (Faller); 599 (Mitchell). Similarly, both Dr. Mitchell and Dr. Long noted Plaintiff's height and weight when they evaluated Plaintiff's physical limitations. Tr. 259 (Long), 639 (Mitchell). This is enough to show that they were aware of Plaintiff's potential obesity. See Wilson, 2015 WL 5786451, at *30 (citing Paulino, 2010 WL 3001752, at *19). Moreover, each of these physicians subsequently provided an overall

assessment of Plaintiff's limitations. Tr. 258–62 (Long); 639–43 (Mitchell); 348–52 (Faller). Because the ALJ relied on these assessments throughout his decision, the Court finds that he gave sufficient consideration to Plaintiff's obesity. See Wilson, 2015 WL 5786451, at *30 ("The fact that the ALJ determined, based on these doctors' records, that Plaintiff had some physical limitations . . . is sufficient for the Court to conclude that the ALJ considered, albeit indirectly, Plaintiff's obesity in making his RFC evaluation.").

### E. The ALJ Conducted a Fair and Impartial Hearing

Finally, Plaintiff contends that the ALJ's conduct during the administrative hearing was improper. Pl's Br., at 18. Although not without merit, Plaintiff cannot meet the high burden necessary for remand.

Social Security hearings are not adversarial proceedings. Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508 (2d Cir. 2009). For this reason, a federal court can question the outcome of a hearing when an ALJ displays "deep-seated favoritism" that would prevent him from making a fair decision. Pabon v. Comm'r of Soc. Sec., No. 14-CV-1954 (PAE) (FM), 2015 WL 4620047, at *5 (S.D.N.Y. Aug. 3, 2015), adopted sub nom., Pabon v. Colvin, 2015 WL 5319265 (Sept. 11, 2015) (citations omitted). An ALJ, however, is presumed to be unbiased, and to exercise his decision-making authority with honesty and integrity. Id. (citing Withrow v. Larkin, 421 U.S. 35, 47 (1975)). This presumption can be rebutted if the plaintiff shows a conflict of interest or some other specific reason for disqualification. Maldonado v. Berryhill, No. 16-CV-165 (JLC), 2017 WL 946329, at *29 (S.D.N.Y. Mar. 10, 2017) (citing Schweiker v. McClure, 456 U.S. 188, 195 (1982)). Because the ALJ's conduct must be clear from the record, a claimant bringing a due process claim faces a difficult burden. Pabon, 2015 WL 4620047, at *5 (comparing cases).

During the administrative hearing, Plaintiff testified that her illness had destroyed both her career and personal life. Tr. 66. The ALJ then had the following exchange with Plaintiff:

> Q: Ma'am? Okay, ma'am, listen to me, everybody has problems. Okay. And I'm not saying you don't have problems but don't necessarily put yourself in a bag or put yourself in a box when you might not have to. Now have you ever talked to somebody like Ms. Gagliano at the Bureau of Vocational Rehabilitation to see if you could do a job that maybe would be within your capabilities where you wouldn't be driving or you wouldn't have to visit other people to drive around the city and stuff. Have you ever talked to somebody about that?
> A: No, I haven't talked to nobody about that.
> Q: And have you – you know I'm not saying you can't. I'm just saying you know a lot of the jobs, especially which you have an advancement and you've got computer skills and you've got capabilities of doing things at a desk. For example, you – you shop with your computer, right? Correct?
> A: Sometimes.
> Q: I mean you said – I mean so a lot of times what you can do with a computer is you could be the person taking orders for people who are shopping on computers. A lot of times you could be the person who's processing reports from the person who goes out to all these different daycare facilities and then sends those reports, puts the reports together and sends them on to your – or you might be the boss –
> ATTY: I'm sorry. Judge, I'm going to object . . . .

Tr. 67.

Plaintiff argues that the ALJ's comments "suggested a predetermination of the case." Pl's Br., at 19. The Court disagrees. Immediately following counsel's objection, the ALJ explained that he was not assuming that Plaintiff had a certain functional capacity. See Tr. 68. Rather, the ALJ stated that he was trying to determine whether Plaintiff believed she could perform sedentary work, and if not, why that was the case. Tr. 69–70. The ALJ seemed to recognize that his questioning may have been confusing. After Plaintiff answered the ALJ's question, the ALJ allowed Plaintiff's attorney to cross-examine Plaintiff without interruption about her ability to

perform a desk job. Tr. 70–72. Accordingly, while another line of questioning may have been more desirable, Plaintiff has not overcome the presumption that the ALJ was unbiased and fair.

At points during the hearing, however, the ALJ was more hostile than is contemplated for a Social Security proceeding. See Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004) ([T]he model [for Social Security disability determinations] is investigatory, or inquisitorial, rather than adversarial."). The ALJ expressed unnecessary incredulity at Plaintiff's testimony, asking her multiple times to explain her symptoms and why she believes she is unable to work. See, e.g., Tr. 50, 54, 69.[3] While the ALJ's behavior did not rise to the level of "deep-seated favoritism," the Court is compelled to reiterate what is already well-established in this Circuit: considering the "essentially non-adversarial nature of a benefits proceedings," an ALJ must "act on behalf of all claimants and affirmatively develop the record." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Expressing unnecessary hostility during a claimant's testimony does not promote this goal.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment is DENIED, and the Commissioner's motion for judgment is GRANTED. The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 15 and 21.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:    March 29, 2019
                New York, New York

---

[3] At the onset of the hearing, the ALJ remarked: "You look fine today. You're walking today. You walked in . . . here . . . Why can't you do a desk job?" Tr. 50. And later: "That's a pretty easy job. Why can't you do that job? I don't understand." Tr. 54. When Plaintiff again explained that she cannot walk more than one block without having to rest, the ALJ continued: "Ma'am, what if you just get a job back at the office where you would process the paperwork from people like you? I mean what if you just had a sit-down job?" Id.